Yes, good morning. May it please the court, I'm Marcolina Panzo, appearing for plaintiff and appellant Asha Perez. Plaintiff will do her best to reserve two to three minutes for rebuttal. This is the second Ninth Circuit appeal that this case has been through. The first time the district court threw this case out for procedural reasons on summary judgment. After the first Ninth Circuit appeal, one claim survived. That was the sexual discrimination claim was sent back to the district court. Back in the district court, plaintiff objected to subject matter jurisdiction with a single state-based claim remaining. There had been several federal claims that had been dispensed. In the proceedings, the second time, the district court did not allow one appearance and threw the case out again on summary judgment, this time for factual reasons. In the judgment the district court made, it drew a hard line between discrimination and harassment. It seemed as if the district court was struggling with what the Ninth Circuit had said. But we have clear authority in California case law. It's the Ogilevsky case from 1993, a California appellate case, that holds that the difference between discrimination and harassment is really whether there is a tangible loss of benefits. Here, the district court did find that there was a tangible loss of benefits. The tangible loss of benefits was the pay grade, the pay step down that lasted for a year, and the internal affairs investigation. The court also found that that was an adverse employment action. But because of that, that Mogilevsky case tends to make clear the line between discrimination and harassment is very fine. Harassment will qualify as discrimination, and discrimination can take the form of harassment. So it's not clear from the court's order which facts were really considered and which facts were not considered. One of the most troubling aspects of this case is perhaps demonstrated conveniently by ER 17. There was a sentence left out of the brief that was included about Deputy Devine testifying that she witnessed male deputies searching for lost paperwork at a certain point in time. That testimony was corroborated by plaintiff herself. What is the relevance of that? The relevance of that is that plaintiff had complained through the chain of command that she was being treated differently about discrimination, about a hostile work environment, which you would typically describe as harassment. Here, we're pleading it as discrimination. After that complaint. I'm sorry, I don't understand what the, you didn't answer my question. What is the relevance of the fact that she saw some men going looking for lost paperwork? Immediately after she complained through the chain of command, Deputy Devine saw other male deputies searching for paperwork and she was asking what was going on. I'm sorry, what is, so what if they were looking for paperwork? Well, sure, plaintiff was sent to an internal affairs investigation because Sergeant Faruji said they were looking for their own lost paperwork. Right. Okay, so they were looking for it, maybe they found it. So what was the problem? There was some glitch in the paperwork at AC Transit Unit. Plaintiff was not given that same opportunity to search for her own paperwork, yet Sergeant Faruji found the paperwork. He found paperwork of hers that was not submitted. So this theory of disparate treatment is that male deputies were given a chance to find lost paperwork because there was some problem in the unit with lost paperwork, but plaintiff's paperwork was found by her sergeant. We have no idea in the world whether it's the same amount of paperwork, whether it's his old paperwork, whether it was student paperwork, whether, I mean, it could be that they got a blood morning and they were going to hand in their paperwork from the day before and they couldn't find it, so they were looking for it. There's a lot of testimony about how the paperwork process worked, where different trees were and how things were submitted, but the way the facts look, it's that Deputy Devine and Deputy Perez were treated with a completely different standard, and it seemed as if plaintiff was set up to fail. But the evidence, as this demonstrates, was pretty vague on that. I mean, they thought that for sure, and they were quite adamantly positive about it, but if that sort of testimony is the best they could do, i.e. they saw some men looking for lost paperwork, that doesn't tell you very much, does it? Well, it's corroborated by the testimony of Ms. Hornsby. Ms. Hornsby is Captain Buchanan's assistant. So, Ms. Hornsby heard this meeting that a plaintiff had with Captain Buchanan, the highest... That's something completely different, right? No, no, that was the meeting that plaintiff asked Ms. Hornsby to set up to complain about what she perceived to be disparate treatment, and what other women also perceived to be disparate treatment. That's a meeting... And he said he didn't remember it, and so... Doesn't remember it at all. Well, it's a long meeting. With crying, it's hard to believe that he doesn't remember that. And the fact that, so, therefore, what? Therefore, he's not believable, and therefore, what? Well, there's gotta be a credibility determination made by a jury in that case. The cases are McCabe from California, and McSherry from the Ninth Circuit. But what does it have to do with the question of disparate discipline? Basically, all we have before us at this point, back from the Ninth Circuit, is, from the earlier opinion, is disparate discipline. That's all that's left, is that right? Disparate treatment, yes. Absolutely. And potentially disparate discipline. In other words, my understanding of what happened was, is that because of the preclusion problems, the issue that's left here is whether the whole disciplinary proceeding itself was disparate treatment. Just that, just the disparate discipline. Is that right? That's all I got. That sounds correct. All right. And isn't that problematic for you? Because, if I recall correctly, your client's male supervisor received the same exact discipline as Perez. I mean, doesn't that undermine your claim here? It's not exactly the same discipline. And he was actually able to advance through the ranks. So, from the experience. Well, why isn't it exactly the same discipline? I thought it was the same discipline. I don't think he was also deemed dishonest, formally. In the same way that plaintiff was. And that's more significant for her. But her conduct, and this is the other thing, her conduct across the board, when you compare it to everyone else, is far more egregious. I mean, she had the active of, you know, the actual lying to the, the finding that was made that she lied to the internal affairs people, or to the people who were investigating. Nobody else had that, did they? Well, she, did anybody else have that? As far as I know, no. So, I'm just trying to figure out how we can say that, you know, what occurred here in terms of the discipline was disparate. That's part of the credibility issue as well. In the sense that plaintiff swears to this day she did the same thing that everyone else did. There was no inflation of statistics. The paperwork doesn't show a large, an inflation of statistics. There were a few administrative problems, apparently, that caused some citations to go away. That would cause a discrepancy in the statistics. She believed that they were processed, and then they actually could not be. It's still not a massive problem. So, as plaintiff was going through internal affairs, she was still complaining about being treated differently. This whole process wasn't fair. She, in fact, went to her union at that time. It seems as if she's being set up, is what she was saying. It seems as if this paperwork was being used against her. But she swears to this day that there was no inflation of statistics, and I agree completely with your honor that it is a problem, and it's been very challenging. Do you want me to do it one more time? Please, thank you very much. May it please the court, my name is Christine Maloney. I represent the Alameda County Sheriff's Office in this matter. The decision of the district court should be affirmed because of three reasons. First, the court clearly had pending or supplemental jurisdiction over the remaining state discrimination claim. In this case, it is undisputed. She had an argument at that point, so what do we do? Okay, I'm sorry, I thought she started there. She did, but she had an argument. Okay, the second point, why the district court's decision should be affirmed is because it did not abuse its discretion by failing to continue or postpone the summary judgment motion to allow the plaintiff more time for discovery. A plaintiff's got time. I don't have that either. Okay, all right, let's get to the big one then. The third one is that the appellant did not produce specific and substantial evidence that her documentation failures were a pretext for gender discrimination. The most significant evidence in this case is the affirmative evidence of actually no discrimination, which your honors have pointed out, at least two of those. One is the fact that Plaintiff's male supervisor, Sergeant Ferrugia, who was responsible for reviewing and approving her paperwork, was subject to the very same investigation and disciplined in the very same way with the one-year, one-step temporary pay reduction that the plaintiff suffered. Should he have gotten more since he was a supervisor? These were not his failures. He did not fail to turn in arrest reports on an arrest he executed. He did not fail to give citations to 19 individuals for parking citations and then submit those to the Department of Motor Vehicles. So someday, an individual is going to be getting communications from the DMV, but they have unpaid citations and they never received the citation. He did not do any of those apps. These were all committed by Deputy Perez. What he failed to do was ensure that she was submitting complete paperwork. And so, Alameda County Sheriff's Office Management imposed the same discipline on him. That fact alone negates any possibility that this was something that was targeted at her because of her gender. Second, affirmative evidence of non-discrimination. I looked at the possibility, i.e. if she had demonstrated, I mean, I gather that if she had demonstrated specifically that there were men who had done the same thing that she did and who weren't disciplined, she would have a case. She tried to do that, but she did it fairly vaguely. Yes. If she had, so the problem with her evidence isn't what she was trying to prove, it's whether she adequately demonstrated. Correct. She made conclusory assertions that there were similarly situated male deputies who did the same thing and weren't disciplined. But she provided new evidence of who those individuals were, what evidence or documentation they failed to submit, how many times and over what period of time. The only person she cites, she was one of the male deputies on her squad, Deputy Home, and her allegation there is that he turned in his timesheets late and he turned in his patrol logs late. She doesn't say when, how many times or over what period of time or how she has personal knowledge of that fact. Moreover, that's not the conduct she was charged with engaging in. She was charged with engaging in much more severe conduct than that over a course of two years. What about Sergeant Wolf's comments? I mean, is it true that Ms. Perez complained about Sergeant Wolf's comments? But her supervisors failed to report or investigate her complaint. Is this some evidence of pretext? I don't believe so. So here's what she alleges. She says that she complained directly to Sergeant Wolf that he made the protective class comment and the pink flamingos comment about somebody other than plaintiff. Those don't necessarily relate to gender. I've supplied comments that referring to the B word towards female is not necessarily a misogynist term that indicates a gender bias. Moreover, the important thing about Wolf is that he was nowhere involved in the decision to either initiate the investigation or recommend or impose the discipline. If he wasn't interviewed in the investigation, he had no involvement. She has a set of, I mean, one of the problems here is that there's a lot of evidence and it hasn't been presented very well in terms of organizing it. But there is a fair amount of evidence, or one of the suggestions is that they weren't following their own disciplinary policies in a number of respects. You said in your brief, as I recall, that that doesn't matter, but my understanding of discrimination was that it doesn't matter for a proof pretext if you have a set of rules that you have to follow in a particular instance that is some education that you are treating this person differently. Is that not true? I believe this is one area where California law diverges from Ninth Circuit law in terms of what it takes to prove pretext. And I mean Ninth Circuit law pursuant to Title VII. I've cited two California cases. One is a concurring opinion from the California Supreme Court case that says an employer's failure to follow its own policies is not evidence of pretext. That is the California rule. Well, it's a concurring opinion, but it's not the California law. What's the other opinion? And the other opinion is an appellate opinion, it's not called the California Court of Appeal opinion. It wasn't that old, as I recall. But I did cite the other one that specifically held that as well. There was no allegation in this case that the defendant did not follow its own disciplinary policies. Captain Stavart has the disciplinary process attached to this declaration, and that was followed to a T. The only allegation with respect to a policy that wasn't followed was the policy to commence an investigation into allegations of sex-based harassment. And there is a dispute here. What is undisputed is that the plaintiff complained of a hostile work environment. She claims that was a hostile work environment based on sex, and she told people that. Alameda County Sheriff's Office denies that. When she complained of hostile work environment, she told people no facts that linked it to gender. Well, that's usually what's meant. What? What, narrowly, that is what is meant by hostile work environment. Actually, I would disagree with that. I think employees use hostile work environment loosely in a vernacular when they're not getting along with their supervisor without linking it to a protective class. What about that? I think Landry, Peirce, and Devine all testify that they were penalized for untimely paperwork, but that their male colleagues received lenient treatment. I guess, why is that enough to create a material issue of fact? If we look at Devine, first of all, they all target both. Both was not involved in this disciplinary decision. Devine talks about the fact that she was put on a performance improvement plan for, in part, submitting late-time sheets and paperwork. That's not the same conduct that the plaintiff was accused of engaging in. The plaintiff's conduct was much more severe. Failure to submit arrest records, failure to log evidence, and so, therefore, what? And so, therefore, they're not comparable. It's not offenses of comparable size. If the suggestion is that Devine was disciplined for what she did, but it wouldn't have been for what she did, that it's still evidence of having a different disciplinary regime for women and for men. But that's a conclusion, once again. There's no evidence that that was, in fact, the case. Where is the evidence of the men and what they did when they did it, and how, over the course of the time? The problem is that Devine isn't like Perez. The problem is that she doesn't demonstrate what she was trying to demonstrate, which is differential discipline. Yes, I mean, she's used the example of- But that doesn't make whether Devine is like Perez, exactly. It doesn't. No, you're trying to demonstrate that there's a pattern of discriminatory discipline. I don't know why it matters if it's the same discipline as this. I'm going by the factors in the Me Too cases. They look at, is what the witness, the conduct of the witnesses did. Okay, that's why you get too tightly tied into particular cases. The question is whether this would have been pertinent evidence if she had demonstrated that Devine was disciplined differently than men in Devine's situation. Yes, if I- Even if Devine wasn't like Perez. Yes, I agree on a Me Too argument. Yeah, you're trying, okay. I thought you were saying otherwise. Go ahead. Yeah, and on the Me Too argument, then it's gonna need to be the same decision maker. It's gonna need to be not remote in time. It's like the Sergeant Stallworth's discipline is, or situation, and- So why does it have to be not remote in time? So whether or not it is a dish of discrimination, the one of the factors under whether the Me Too evidence is material- I know it's a really silly list, but it seems to me that if there was a, I don't know, for a long period of time, I wouldn't care how long the period was. Well, because people change. People who are in charge change. I mean, Sergeant Stallworth was in an entirely different position. I mean, is he a super-disciplined person? Anyway, go ahead. Okay. I'd like to go back to the other evidence of affirmative evidence. So please wrap up. Okay. Because there is affirmative evidence of non-discrimination, which includes the discipline of the supervisor, the just cause findings of the Civil Service Commission, and the fact that Plaintiff in her deposition admitted she didn't think she got disciplined because of her gender. For those reasons, there was strong evidence of non-discrimination, and that most Plaintiff only created a weak inference from her conclusory evidence of gender discrimination. Therefore, summary judgment was appropriate, and the district court should be affirmed. Okay, thank you very much. Thank you. We have some time for one more. Thank you. What is your strongest evidence of debunking disparate judgment, or what, wrapped together? To return to that point that Your Honor had made about the failure to follow policy being evidence of disparate treatment, there's very good law on that. There's the Morgan-Cowlick. I have lucky evidence, though. What's the evidence of failure to follow policy? Both Deputy Devine and Deputy Perez were put on performance improvement plans. Both of them observed male deputies doing the same exact thing that they had done. So this is a disparate treatment in the way that the... What's the failure to follow policy? What's the failure to follow policy? It's a failure to follow policy in the sense that women are being held to a particular discipline. I think that you're just saying it was direct evidence of discrimination. My understanding of the failure to follow policy is our policy is that we're gonna discipline people in a certain way, and they discipline her in some different way, suggesting that they were not following their own policies, and that's prejudicial, and that you don't need a comparator. What is your evidence without the comparators? The fact that Deputy Perez, and actually Deputy Stallworth, both were subject to discipline after they complained about a hostile work environment. I have to respectfully disagree with my colleague. They think when employees complain about a hostile work environment, they believe they're facing harassment. And the reality is, the employer is, in some cases, is the one that's not before us anymore. That issue. Disparate treatment is an issue, and this was pleaded for treatment based on retaliation, and it should be based on sense. Right, and that, so Sergeant Stallworth, as a woman, complaining about a hostile work environment, then facing discipline. So there's a pattern in practice of disciplining women who complain about discrimination. There's a pattern in practice of disproportionately disciplining women, despite the fact that the policy is supposed to be the same and identical. Just briefly, the disparate treatment cases are the Morgan case from California, and the Ninth Circuit case is actually a BLAM. And Gonzales, there are two, there are cases from the Ninth Circuit on FEMA. I believe so, I believe so, yes, and they were decided in the Ninth Circuit. If I could close on the jurisdictional argument, it seems that three of the four from 28 U.S.C. 13, the Institute of Social Justice, and I'm sure I know a lot about it, so if I can try to answer, besides the jury. Just thought to raise it again, because I've talked in it. Thank you very much. Thank you, Iris, very much. In the case of Perrin v. Alexandria, the sheriff's office has submitted a, we'll take a,
judges: Hawkins, Berzon, Murguia